390 A.2d 233

**Kenneth W. BEHREND, Appellee,**

v.

**The BELL TELEPHONE COMPANY of Pennsylvania, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 21, 1977.

Decided July 12, 1978.

---

36

Jerome J. Shestack, Philadelphia, with him Donald P. Eriksen, Pittsburgh, for appellant.

James E. Beasley, Philadelphia, with him Jeffrey M. Stopford, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

This case is before us on remand from the Supreme Court[1] to decide whether the limitation of damages provision of Bell's tariff is valid under Article III, Section 18 of the Pennsylvania Constitution:

> "The General Assembly may enact [workmen's compensation laws] . . . but *in no other cases shall the General Assembly limit the amount to be recovered .* . for injuries to persons or property . . .." (Emphasis added.)

After a studied consideration of the able arguments of both parties, we conclude that Bell's tariff is not violative of the above-quoted constitutional provision.

We start with the well-settled principle that "[a] constitution is not to receive a technical or strained construction, but rather the words should be interpreted in their popular, natural and ordinary meaning. We should also

1. *Behrend v. Bell Telephone Company,* 242 Pa.Super. 47, 363 A.2d 1152 (1976), *vacated and remanded,* 473 Pa. 320, 374 A.2d 536 (1977). The pertinent facts and procedural history of the case are set forth in our prior reported decision and, therefore, need not be repeated here.

consider the circumstances attending its formation and the construction probably placed upon it by the people. *Commonwealth ex rel. Tate v. Bell,* 145 Pa. 374, 22 A. 641 (1891)." *Commonwealth v. Harmon,* 469 Pa. 490, 494–95, 366 A.2d 895, 897 (1976) (footnote omitted). *See also Berardocco v. Colden,* 469 Pa. 452, 366 A.2d 574 (1976); *Breslow v. Baldwin Township School District,* 408 Pa. 121, 182 A.2d 501 (1962); *Commonwealth ex rel. Reinhardt v. Randall,* 356 Pa. 302, 51 A.2d 751 (1947); *O'Connor v. Armstrong,* 299 Pa. 390, 149 A. 655 (1930). With this principle firmly in mind, we turn our attention to a consideration of the particular constitutional provision here in question.

Our Supreme Court, in *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975), recently traced the historical background of Article III, Section 18. In so doing, the Court left no stone unturned; there simply is nothing we can add that would lead to a better understanding of that provision. For purposes of the present inquiry, we need only mention that the Pennsylvania Constitutional Convention of 1872–73 specifically addressed itself to the Act of April 4, 1868, P.L. 58, whereby the General Assembly had limited the damages recoverable against a common carrier by a negligently injured plaintiff. The manifest purpose of the framers of Article III, Section 18, and the people who voted for it, was to invalidate the Act of April 4, 1868, and at the same time, to prevent the General Assembly from ever again enacting similar legislation, *i. e.,* legislation which would limit the amount of damages recoverable by a victim of another's negligence.

Case law applying Article III, Section 18, lends supports to this interpretation. *See, e. g., Tropiano v. Travelers Insurance Company,* 455 Pa. 360, 362, 319 A.2d 426, 427 (1974) (Article III, Section 18 "preclude[s] the enactment of general legislation covering injuries other than those arising in the course of employment."); *Dejesus v. Liberty Mutual Insurance Company,* 439 Pa. 180, 182, 268 A.2d 924, 926 (1970)

(same language); *Jackman v. Rosenbaum Co.,* 263 Pa. 158, 169, 106 A. 238, 242 (1919) ("under this constitutional provision, no valid statutory limitations may be placed upon claims for injuries recoverable at law . . ."); *Lewis v. Hollahan,* 103 Pa. 425, 430 (1883) ("The purpose of the [eighteenth] section of the third Article of the Constitution was to nullify, as far as possible, then existing legislation limiting the amount to be recovered for injuries resulting in death, or for injuries to persons or property . . . and, at the same time, prevent all such legislation in the future."). *See generally,* Shrager and Applebaum, *The Pennsylvania No-Fault Motor Vehicle Insurance Act: A Constitutional Analysis with Proposals for Alternative Legislation,* 48 Temp.L.Q. 475 (1975).

Thus, it becomes apparent that an attempt by the Legislature to limit damages recoverable against Bell in a negligence action would not pass constitutional muster. Such an enactment would fall squarely within the scope of Section 18's express proscription against legislatively imposed limitations on liability. As written, however, this constitutional provision prohibits only acts or enactments of the "General Assembly."[2] Indeed, a proposal during the Constitutional Convention of 1872–73 which would have proscribed *all* limitations on damages was considered and rejected.

■ Based on the foregoing, we believe that the issue before us can be easily resolved. The Legislature obviously has not limited the recovery available under a cause of action; this conclusion is inescapable. Rather, it is Bell, through its tariff, that has limited the damages recoverable by an injured plaintiff. Such being the case, the tariff is not a limitation on damages within the meaning of Article III, Section 18.

2.  And, as our Supreme Court clearly stated in *Commonwealth ex rel. Truscott v. Philadelphia,* 380 Pa. 367, 376, 111 A.2d 136, 139 (1955), "for a hundred years the people of Pennsylvania have known that the words 'General Assembly' mean the legislature . . .."

Apparently recognizing the inherent difficulty with the position he advocates, appellee attempts to bolster his argument by seizing upon the statement in our prior decision that tariffs established, including limitations of liability, have the force and effect of law. And, to this end, he posits "[t]he sole reason . . . that Bell's tariff limiting damages is enforceable is because it carries with it the weight of the legislature, as expressed in the Public Utility Law permitting the PUC to adopt comprehensive regulations governing utilities." Appellee's Brief at 9. Appellee thus urges us to hold that Bell's tariff is to be "deemed" an act of the Legislature for purposes of our present inquiry. This argument, although appealing in its logic, must fail.

True, we recognized in our prior decision "the power vested in the PUC to evaluate the reasonableness of tariffs or regulations filed with it and to determine whether the provisions therein are compatible with the code and policies of the commission and consistent with its regulatory scheme." 242 Pa.Super. at 74–75, 363 A.2d at 1166. To suggest, however, that Bell's tariff should therefore be "deemed" an enactment of the Legislature, and as such proscribed by Article III, Section 18, is to impermissibly expand the scope of that constitutional provision.

Moreover, although appellee argues very strenuously to the contrary, we believe that the United States Supreme Court's decision in *Jackson v. Metropolitan Edison Company,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) is of strong persuasive value. In that case, a utility customer sought to mount a fourteenth amendment challenge to the termination of electric services pursuant to provisions of the utility's general tariff on file with the PUC. The Supreme Court, however, held that the termination of service was not state action when "the sole connection of the Commission with this regulation was Metropolitan's simple notice filing with the Commission and the lack of any Commission action to prohibit it." *Id.* at 355, 95 S.Ct. at 456. The utility's acts were seen to be purely private because of the absence of a

direct nexus between state involvement and the defendant's challenged acts, even though the tariff containing the termination of service provision was filed pursuant to state law.

We will concede for the moment that Bell's present tariff was "approved" by the PUC. Nevertheless, analogizing to *Jackson,* we would be hard pressed to conclude that Bell's tariff, including the provision for limitation of liability, was thereby converted into an act of the Legislature for purposes of Article III, Section 18.

Since we have seen that the Legislature itself has not acted to limit the damages recoverable against Bell, and concluded that Bell's tariff cannot be "deemed" an act of the Legislature, there remains but one possible theory under which appellee could prevail, *i. e.,* that the Legislature, through the Public Utility Law, has impermissibly acted to vest in the PUC the power to limit the amount to be recovered by a negligently injured plaintiff. However, it is apparent, at least to us, that such is not the case.

The PUC is a creature of statute and as such has only those powers that are expressly or by necessary implication conferred upon it by the Legislature. *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 383 A.2d 791 (1978); *Allegheny County Port Authority v. Pa. P.U.C.,* 427 Pa. 562, 237 A.2d 602 (1967). Our Legislature, through the Public Utility Law, has placed a broad range of subject matters under the control of the PUC. In *Feingold,* however, our Supreme Court concluded that the PUC's statutory array of powers does not include the power to award damages. It would be anomalous for us to recognize that the PUC does not have the power to award damages, and yet to hold that the Legislature has vested in the PUC the power to limit those damages that it is powerless to award.

For all the foregoing reasons, we conclude that Bell's tariff is valid under Article III, Section 18 of the Pennsylvania Constitution.

The case is reversed and remanded for a new trial in accordance with our prior opinion in *Behrend v. Bell Telephone Company,* 242 Pa.Super. 47, 363 A.2d 1152 (1976).

WATKINS, former President Judge, did not participate in the consideration or decision of this case.